UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 15 2016

Errant Gene Therapeutics, LLC *et al.*,

Plaintiffs,

–v–

Sloan-Kettering Institute for Cancer Research,

Defendant.

15-CV-2044 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

This case arises out of a licensing agreement for gene therapy patent rights. On April 20, 2015, Plaintiffs Errant Gene Therapeutics, LLC ("Errant Gene"), Rocco Girondi, and Michael Buccellato[1] filed an Amended Complaint seeking an order of replevin and damages for fraud and breach of contract. *See* Dkt. No. 16. On May 7, 2015, Defendant Sloan-Kettering Institute for Cancer Research ("Sloan-Kettering") moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, strike certain portions of the Amended Complaint. *See* Dkt. No. 18. For the reasons articulated below, Sloan-Kettering's motion is granted in part and denied in part.

I.    BACKGROUND

In the early 2000s, researchers at Sloan-Kettering began gene therapy clinical trials treating thalassemia, a fatal inherited blood disorder. Am. Comp. ¶¶ 1, 16-17. In 2005, after Sloan-Kettering decided to cease pursuing gene therapy for blood disorders, Errant Gene

---

[1] Rocco Girondi, son of Errant Gene founder Rocco Girondi, and Michael Buccellato are individuals suffering from thalassemia, the disease whose treatment is the subject of this case. Am. Comp. ¶¶ 4, 13.

1

negotiated an exclusive license to certain of Sloan-Kettering's gene therapy patent rights. *Id.* ¶ 17, 19; Dkt. No. 25 ("Sussmane Decl.") Ex. A ("2005 Agreement") ¶ 1.2. From 2005 to 2011, Errant Gene used those rights to develop treatments for thalassemia and other blood disorders. Am. Comp. ¶¶ 21-36. After a series of disputes, the parties contracted in 2011 to terminate the 2005 Agreement and for Errant Gene to sell its rights in the treatment it had developed ("the Vector") to Sloan-Kettering. *See id.* ¶¶ 50-56, 67-72; Sussmane Decl. Ex. B ("2011 Agreement") ¶ 3 (agreeing to "sell[], assign[] and transfer[] to [Sloan-Kettering] all of [Errant Gene's] right, title and interest in and to, the Vector"). In exchange, Errant Gene was entitled to receive fifty percent "of all consideration received . . . from any license, sale or commercial exploitation of any Treatment using the Vector." *Id.* ¶ 6. Sloan-Kettering had additional obligations under the 2011 Agreement to promptly file paperwork with the FDA, commence a clinical trial, and "reach a medically reasonable determination as to the efficacy of the [V]ector." *Id.* ¶¶ 4-5.

After Sloan-Kettering allegedly failed to fulfill these obligations, Errant Gene filed this suit. *See* Dkt. No. 1. Sloan-Kettering now moves to dismiss the Amended Complaint and, in the alternative, strike certain portions of the Amended Complaint. *See* Dkt. No. 18.

## II.  LEGAL STANDARD

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* Insufficient are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

When evaluating a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint, and draw[s] all reasonable inferences in the plaintiff's favor." *Barrows v. Burwell*, 777 F.3d 106, 111 (2d Cir. 2015). The Court may also consider documents attached as exhibits, incorporated by reference, or that are "integral" to the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). Because both the 2005 and 2011 Agreements are incorporated by reference in the Amended Complaint,[2] *see* Am. Comp. ¶ 19, 75, the Court may consider those documents.

## III.    DISCUSSION

In its motion to dismiss, Sloan-Kettering raises five distinct arguments: that Plaintiffs Gironi and Buccellato lack standing to sue to enforce the contract; that an order of replevin is not warranted; that the fraud claims are improper; that Errant Gene fails to state a claim for breach of contract; and that certain material in the Amended Complaint should be stricken. The Court will address each of these arguments in turn. In doing so, the Court applies New York law because the 2011 Agreement incorporates by reference the 2005 Agreement, which contained a New York choice of law clause. *See* 2011 Agreement at 1; 2005 Agreement ¶ 15.1; *see also Koko Contracting, Inc. v. Cont'l Envtl. Asbestos Removal Corp.*, 709 N.Y.S.2d 825, 826 (App. Div. 2000) (choice of law clauses are enforceable unless "unreasonable, unjust, or [] contraven[ing] public policy"); *H. Sand & Co. v. Tishman Constr. Corp. of New York*, 595 N.Y.S.2d 561, 562 (App. Div. 1993) (choice of law clauses may be incorporated by reference).

---

[2] Although the Amended Complaint indicates that these documents should be attached as Exhibits A and B, *see* Am. Comp. ¶¶ 19, 75, Plaintiff inadvertently omitted them. *See* Sussmane Decl. ¶¶ 4-5.

### A.     Plaintiffs Girondi and Buccellato Lack Standing

Sloan-Kettering argues that Girondi and Buccellato do not have standing to enforce the 2011 Agreement because they are not parties to the contract. Br. at 18. Plaintiffs counter that these individuals are third-party beneficiaries and can thus sue to enforce the agreement. Opp. Br. at 25. To qualify as a third-party beneficiary, a party must demonstrate that the contract "was intended for his benefit" and that the benefit is "immediate, rather than incidental." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 469 (N.Y. 1983). In other words, "the agreement . . . must clearly express an intention to assume a duty directly to" the third party. *Ultra Scope Int'l v. Extebank*, 599 N.Y.S.2d 361, 366 (Sup. Ct. 1992), *aff'd*, 598 N.Y.S.2d 699 (1993). To sue to enforce a contract, a third-party beneficiary must demonstrate that "no one other than the third party can recover if the promisor breaches the contract or that the language of the contract . . . clearly evidences an intent to permit enforcement by the third party." *Hines v. 1025 Fifth Ave., Inc.*, No. 14-CV-3661 (SAS), 2015 WL 765943, at *2 (S.D.N.Y. Feb. 23, 2015) (citing *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 45 (1985)).

Because Errant Gene is, in this very action, suing for breach of contract, Girondi and Buccellato cannot demonstrate that no one else can sue for breach of contract. *See id.* As a result, they can only enforce the contract if "the language of the contract . . . clearly evidences an intent to permit enforcement by the third party." *Id.* (citing *Fourth Ocean Putnam Corp.*, 66 N.Y.2d at 45). Plaintiffs argue that Girondi and Buccellato satisfy this prong because they "completed the required tests to enroll in [Sloan-Kettering's] clinical trials." Opp. Br. at 25. The fact that Girondi and Buccellato were *eligible* to participate in a clinical trial does not "clearly express" that Sloan-Kettering "assume[d] a duty directly to" them by contracting to conduct clinical trials on three unidentified patients. *See Ultra Scope Int'l*, 599 N.Y.S.2d at 366.

4

Similarly, a contractual obligation to develop a treatment for thalassemia does not create a direct, enforceable duty to every individual with thalassemia.

"Since the interpretation of a contract generally is a question of law to be determined by the court, the court may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief." *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956 (RPP), 2014 WL 837050, at *5 (S.D.N.Y. Mar. 3, 2014) (citing *United States v. Liranzo,* 944 F.2d 73, 77 (2d Cir. 1991); *DynCorp v. GTE Corp.,* 215 F. Supp. 2d 308, 315 (S.D.N.Y. 2002)). Because the 2011 Agreement did not "clearly evidence[] an intent to permit enforcement" by Girondi and Buccellato, they cannot sue to enforce the contract as third-party beneficiaries and their claims are dismissed.

B.  **Plaintiff Errant Gene Fails to State a Claim for Replevin**

In its Amended Complaint, Errant Gene requests an order of replevin directing the return of, *inter alia*, documents, clinical data, and patient samples relating to the treatment it had developed (called by Errant Gene the "EGT Information"). Am. Comp. ¶ 119. To establish a claim for replevin, a plaintiff must demonstrate a "superior right" to the property in question. *Batsidis v. Batsidis*, 9 A.D.3d 342, 343 (N.Y. App. Div. 2004). Sloan Kettering argues that Errant Gene transferred its rights in the "EGT Information" in the 2011 Agreement and is thus not entitled to an order of replevin. Br. at 4-6.

Under New York law, "a written agreement that is complete, clear and unambiguous . . . must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). As noted above, "the court may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief." *Frontline Processing Corp.*, 2014 WL 837050, at *5 (citing *Liranzo,* 944 F.2d at 77;

5

*DynCorp,* 215 F. Supp. 2d at 315). In 2005, Sloan-Kettering granted Errant Gene a license to certain rights related to treatment of thalassemia. *See* 2005 Agreement ¶ 2.1. The 2011 Agreement terminated that license and further provided that Errant Gene "hereby sells, assigns and transfers to [Sloan-Kettering] all of [its] right, title and interest in and to, the Vector and EGT Information." 2011 Agreement ¶¶ 1,3.

Errant Gene argues that this transfer of rights under the 2011 Agreement was of limited duration. But there is no durational limitation in the text of the agreement, which effectuated the transfer of "*all* of [Errant Gene's] right, title and interest" in the Vector and "EGT Information" to Sloan-Kettering. *Id.* ¶ 3 (emphasis added). Nevertheless, in support of its limited duration argument Errant Gene points to a provision requiring Sloan-Kettering to make its records available "[f]or the term of this agreement." *Id.* ¶ 9. Under this provision, Sloan-Kettering was obligated to "keep . . . accurate [records] . . . for the purpose of showing the amounts payable" under a profit-sharing arrangement which was to "continue for as long as . . . consideration [for commercialization of the treatment] is received." *Id.* ¶¶ 6, 9. The limitation of the duration of the profit-sharing arrangement to the period of time for which Sloan-Kettering generates a profit does not alter the unambiguous language in the provision terminating Errant Gene's license and transferring all of its rights in the Vector and "EGT Information" to Sloan-Kettering without qualification. *See id.* ¶¶ 1,3.

Because Errant Gene transferred all of its rights to the "EGT Information" in the 2011 Agreement, it fails to state a plausible claim for an order of replevin and that claim is dismissed.

C.     **Plaintiff Errant Gene States a Claim for Fraud**

To demonstrate fraud, a plaintiff must show that "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff;

6

(4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 195 (N.Y. 2007). In support of its motion to dismiss Errant Gene's fraud claim, Sloan-Kettering argues that Errant Gene released its right to bring a fraud claim, that its fraud claim is duplicative of its breach of contract claim, and that it has failed to establish reliance. Br. at 12, 14, 17.

### 1. The 2011 Agreement Release Does Not Require Dismissal

Sloan-Kettering first argues that Errant Gene's fraud claim is barred by the release contained in the 2011 Agreement. This release provides that Errant Gene "hereby releases and discharges [Sloan-Kettering] . . . from all actions . . . whatsoever, known or unknown in law or equity from the beginning of time until the date hereof, that [Errant Gene] ever had, now has, or hereafter can, shall, or may have, *except that there shall be no release related to any duties and obligations imposed by this Agreement*." 2011 Agreement ¶ 11 (emphasis added).

At the motion to dismiss stage, a court may only "dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief." *Frontline Processing Corp.*, 2014 WL 837050, at *5. As Sloan-Kettering admits, the 2011 Agreement "was borne out of the parties' desire . . . to resolve outstanding claims and issues existing between them arising out of the . . . 2005 license agreement." Br. at 12. Reading the last clause of the release in this context, Errant Gene argues that the release was limited to claims arising from the 2005 Agreement and does not affect its right to bring a fraud action in connection with the 2011 Agreement. Br. at 20. For the reasons stated by Errant Gene, the Court concludes that 2011 Agreement release does not "unambiguously show[]" that fraud claims related to the 2011 Agreement are precluded by the contract. *Frontline Processing Corp.*,

7

2014 WL 837050, at *5. As a result, the Court will not dismiss Errant Gene's fraud claim under Rule 12(b)(6) on this ground.

### 2. The Fraud and Breach of Contract Claims Are Not Duplicative

Sloan-Kettering further argues that Errant Gene's fraud claim must be dismissed as duplicative of the contract claim. "A fraud claim should be dismissed . . . when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *First Bank of Ams. v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (App. Div. 1999). However, a party may maintain a separate fraud claim if it alleges "that it was induced to enter into a transaction because a defendant misrepresented material facts." *Id.*

Under the 2011 Agreement, Sloan-Kettering had an obligation to "continue with its work to promptly file" certain paperwork with the FDA. 2011 Agreement ¶ 4. Errant Gene alleges that Sloan-Kettering fraudulently induced it to enter into the contract by knowingly and falsely representing that this paperwork was "done and ready to be filed immediately." Am. Comp. ¶ 132. The representation that the paperwork was "done and ready to be filed immediately" is a factual representation. As a result, Plaintiff's claim that this representation was false is not an allegation that Sloan-Kettering "was not sincere when it promised" to "work to promptly file" the paperwork. *See* 2011 Agreement ¶ 4; *First Bank of Ams.*, 690 N.Y.S.2d at 21. Instead, it is an allegation of a misrepresentation of material fact about the status of the paperwork when the contract was executed. *See First Bank of Ams.*, 690 N.Y.S.2d at 21. A fraud claim of this sort can properly be raised in conjunction with a breach of contract claim. *See id.*

### 3. Plaintiff Errant Gene Sufficiently Alleges Reliance

Finally, Sloan-Kettering argues that the context in which the alleged misrepresentations were made precludes a finding of reliance as a matter of law. Sloan-Kettering first points to

8

language in the 2011 Agreement providing that it would "work to promptly file" the requisite paperwork with the FDA and argues that this contractual language contradicts its alleged misrepresentation. Br. at 16. Similarly, Sloan-Kettering points to the increasingly adversarial relationship between the parties as "negat[ing] as a matter of law any inference that [Errant Gene] was relying on" Sloan-Kettering. Br. at 15.

Under New York law, "justifiable reliance . . . [may be] dispelled by the plain language" of a contract when that language contradicts the allegedly fraudulent representation. *600 W. 115th St. Corp. v. 600 W. 115th St. Condo.*, 180 A.D.2d 598, 599 (N.Y. App. Div. 1992). However, the "plain language" of the 2011 Agreement---that Sloan-Kettering would "promptly file" paperwork with the FDA---does not contradict the Sloan-Kettering's alleged misrepresentation that the paperwork was "done and ready to be filed immediately." 2011 Agreement ¶ 4; Am. Comp. ¶ 132. Furthermore, the adversarial relationship between Errant Gene and Sloan-Kettering standing alone is insufficient to "negate as a matter of law any inference" of reliance on representations of fact made by Sloan-Kettering. Br, at 15; *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 542 (S.D.N.Y. 2002) ("In the absence of some 'red flag,' . . . whether a party may reasonably rely on [factual representations by an adversary] presents a factual issue that cannot be determined at this stage of the proceedings."). Therefore, the Court denies Sloan-Kettering's motion to dismiss with respect to Errant Gene's fraud claim.

### D. Plaintiff States a Claim for Breach of Contract with Respect to Certain Provisions of the 2011 Agreement

In addition to its fraud claim, Errant Gene brings a breach of contract claim alleging that Sloan-Kettering has failed to comply with the terms of the 2011 Agreement. To demonstrate breach of contract, a plaintiff must show that there was a valid contract, that the plaintiff

performed the contract, that the defendant breached the contract, and that the breach caused damages. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (App. Div. 2010). Here, Errant Gene alleges that Sloan-Kettering breached provisions of the 2011 Agreement relating to clinical trial protocols, providing results from clinical trials, commercially exploiting "the Vector" (i.e. the treatment it had developed for thalassemia), filing paperwork with the FDA, and commencing clinical trials. Am. Comp. ¶¶ 150-157. Errant Gene further alleges that these breaches delayed commercialization of the Vector, causing damages in the form of lost profits. Am. Comp. ¶¶ 95, 141, 159-162. Sloan-Kettering disputes these allegations. The Court will address each allegedly breached provision separately and will then turn to the issue of damages.

### 1.     Clinical trial protocol

The 2011 Agreement required Sloan-Kettering to "use its best efforts to treat at least three (3) patients . . . in accordance with [FDA] protocol." 2011 Agreement ¶ 4. Errant Gene alleges that the applicable FDA protocol prohibits charging patients for clinical trials without specific FDA approval, but that Sloan-Kettering nevertheless *attempted to charge* some patients for treatment. Am. Comp. ¶ 152. Errant Gene does not, however, allege that Sloan-Kettering *actually charged patients* for treatment, nor does it allege that *attempting to charge* patients for treatment violates FDA protocol. Further, Errant Gene does not allege that Sloan-Kettering lacked approval from the FDA to charge clinical trial patients. Because the conduct alleged by Errant Gene does not violate the protocol as described in the Amended Complaint, Errant Gene fails to plausibly allege a breach of this particular provision.

10

### 2. Clinical trial data

The 2011 Agreement required Sloan-Kettering to "provide to [Errant Gene] [clinical] trial information, as permitted by law." 2011 Agreement ¶ 4. Errant Gene alleges that Sloan-Kettering failed to provide any such information in violation of this provision. Am. Comp. ¶ 153. Sloan-Kettering counters that Errant Gene never requested the information. Br. at 9. The plain language of the 2011 Agreement, however, does not require Errant Gene to make a request in order to trigger Sloan-Kettering's obligation. 2011 Agreement ¶ 4. Accepting as true Errant Gene's allegation that this information was never provided despite the absence of any legal prohibition, *see Barrows*, 777 F.3d at 111, Errant Gene plausibly alleges a breach of this provision.

### 3. Exploitation of the Vector

Article 3.1 of the 2005 Agreement provided that Errant Gene, the licensee of Sloan-Kettering's patent rights, had an obligation to

> use commercially reasonable efforts to develop and seek registration for, and to introduce into the market [a treatment for thalassemia] through an appropriately thorough and diligent program for exploitation of the Patent Rights as detailed in the Plan referred to below, consistent with sound and reasonable scientific and business judgment, and thereafter continue active, diligent marketing efforts.

2005 Agreement ¶ 3.1. The 2011 Agreement, terminating the 2005 Agreement and transferring to Sloan-Kettering rights in the treatment Errant Gene had been developing, references this obligation. *See* 2011 Agreement ¶ 5 ("Per the requirements of License Agreement [2005 Agreement] Article 3.1, [Sloan-Kettering] will . . . use its best efforts to reach a medically reasonable determination as to the efficacy of the [V]ector."). The 2011 Agreement further provides that "[n]othing [in the agreement] shall be construed to obligate [Sloan-Kettering] to

11

develop any therapy for thalassemia or sickle cell anemia which, in its sole medical judgment is not the best potential treatment for patents [*sic*]." *Id*.

Sloan-Kettering and Errant Gene have sharply contrasting interpretations of these provisions. In its motion to dismiss, Sloan-Kettering argues that it "has no contractual obligation" under the 2011 Agreement "to pursue [commercial] exploitation of the vector." Br. at 7. Errant Gene, on the other hand, counters that the 2011 Agreement's reference to Article 3.1 of the 2005 Agreement "impos[es] on [Sloan-Kettering] the obligation formerly imposed upon [Errant Gene] to use commercially reasonable efforts to develop and seek registration for" a treatment for thalassemia. Opp. Br. at 11. Errant Gene further argues that Sloan-Kettering cannot invoke the "sole medical judgment" clause to defend its lack of exploitation, having acknowledged the efficacy of the treatment in "Blood" magazine and an American Society of Hematology meeting. Am. Comp. ¶ 82.

As previously noted, at the motion to dismiss stage, a court may only "dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief." *Frontline Processing Corp.*, 2014 WL 837050, at *5. Given the language with which the 2011 Agreement references the 2005 Agreement, it is at least ambiguous as to whether paragraph 5 of the 2011 Agreement fully incorporates Article 3.1 of the 2005 Agreement to impose an obligation on Sloan-Kettering to pursue commercial exploitation of the Vector. Because the contract does not "unambiguously show[]" that Sloan-Kettering had no such obligation, Errant Gene plausibly states a claim to relief and the Court will not dismiss its breach of contract claim related to this provision. *Id*.

### 4.      Delays in filing paperwork and commencing clinical trials

Under the 2011 Agreement, Sloan-Kettering was obligated to "continue with its work to promptly file" certain paperwork with the FDA and "diligently proceed with clinical trials." 2011 Agreement ¶ 4. Errant Gene alleges that Sloan-Kettering's three month delay in filing incomplete paperwork and thirteen month delay in commencing clinical trials constitutes a breach of this provision. Am. Comp. ¶¶ 150-51. Sloan-Kettering argues that these brief delays did not violate its obligation to proceed "promptly" and "diligently." Br. at 9.

A contractual obligation to perform "promptly" or "diligently" is comparable to a "best efforts" provision. *See Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 281 N.E.2d 142, 144-45 (N.Y. 1972) (analogizing "best efforts" clauses to "due diligence," "diligent efforts" and "reasonable efforts" clauses). The substantive law on best efforts clauses in New York is "far from clear." *Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609, 613 n.7 (2d Cir. 1979) (Friendly, J.). While Sloan-Kettering correctly notes that some courts require the contract to establish "clear guidelines against which to measure such efforts," other courts, including the New York Court of Appeals, have not so required. *See Ashokan Water Servs., Inc. v. New Start, LLC*, 807 N.Y.S.2d 550, 553 (Civ. Ct. 2006) (collecting cases). For courts not requiring contractually negotiated guidelines for a "best efforts" clause, including courts in this district, "extrinsic circumstances concerning the parties' understanding of [a] term may be considered by the finder of fact" in evaluating breach. *USAirways Grp., Inc. v. British Airways PLC*, 989 F. Supp. 482, 491 (S.D.N.Y. 1997). For that reason, the "precise meaning of [a] 'best efforts' provision and whether [a defendant] breached the provision[] are factual issues that cannot be resolved" at the motion to dismiss stage." *Id.*

13

Instead, for a complaint to survive a motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Errant Gene alleges that Sloan-Kettering waited three months to file incomplete paperwork with the FDA and over thirteen months to begin clinical trials despite contractual obligations to proceed "promptly" and "diligently. Am. Comp. ¶¶ 150-151. In light of the "extrinsic circumstances concerning the parties' understanding of" those terms, *see USAirways Grp., Inc.*, 989 F. Supp. at 491 (namely, Sloan-Kettering's representation that the paperwork was "done and ready to be filed immediately," *see* Am. Comp. ¶ 132), Errant Gene plausibly alleges a breach of this provision.

### 5.     Damages

Finally, Sloan-Kettering argues that Errant Gene's failure to plead non-speculative damages requires dismissal of its breach of contract claims. Br. at 10. Although a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference" that he suffered damages as a result of the breach, *Iqbal*, 556 U.S. at 678, it need not, at this stage, "specify the measure of damages nor plead . . . [specific] proof of causation." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 516 (S.D.N.Y. 2015) (quoting *Xpedior Creditor Trust v. Credit Suisse First Boston* (USA) Inc., 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004)). The precise magnitude of damages proximately caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage.  *See id*; *see also Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract action does not justify dismissal under Rule 12(b)(6) because nominal damages are available under New York law).

Here, Errant Gene alleges that Sloan-Kettering breached the 2011 Agreement in a number of ways and argues that these breaches delayed commercialization of its thalassemia treatment, causing damages in the form of lost profits. *See* Am. Comp. ¶ 95, 141, 157-162. Errant Gene's pleadings describe the alleged causal relationship between breach and damages, allowing the Court to draw the reasonable inference that the breach proximately caused some measure of damages. *See Iqbal*, 556 U.S. at 678; *LivePerson, Inc.*, 83 F. Supp. 3d at 516. This is sufficient for Errant Gene to survive the instant motion to dismiss the breach of contract claim. *See Luitpold Pharm., Inc.*, 784 F.3d at 87 (speculative measure of damages in a breach of contract complaint does not justify dismissal under 12(b)(6)).

### E. Defendant's Motion to Strike is Without Merit

As an alternative form of relief, Sloan-Kettering requests that the Court strike portions of the Amended Complaint. Under Rule 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999). Sloan-Kettering argues that paragraphs 13-71 and 121-128 of the Amended Complaint, describing the relationship between Sloan-Kettering and Errant Gene over the past decade, should be stricken as immaterial to the case at hand. Br. at 19-20. At a minimum, this material is relevant to evaluating the scope of the release in the 2011 Agreement. As a result, the Court denies Sloan-Kettering's motion to strike.

### IV. CONCLUSION

For the foregoing reasons, Sloan-Kettering's motion to dismiss is granted in part and denied in part, and its motion to strike is denied. All claims of Plaintiffs Rocco Girondi and

15

Michael Buccellato and Plaintiff Errant Gene's replevin claim are dismissed with prejudice. Errant Gene's fraud and breach of contract claims survive, although the breach of contract claim is limited as described above. An initial pretrial conference will be scheduled by separate order.

This resolves Dkt. No. 18.

SO ORDERED.

Dated: January 15, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge