USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-5-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERRANT GENE THERAPEUTICS, LLC,

           Plaintiff,

- against -

SLOAN-KETTERING INSTITUTE FOR CANCER RESEARCH,

           Defendant.

OPINION AND ORDER
15-CV-2044 (AJN) (RLE)

**RONALD L. ELLIS, U.S.M.J.:**

## I. INTRODUCTION

On November 3, 2016, Defendant Sloan-Kettering Institute for Cancer Research ("SKI") filed a motion to enforce the Court's Protective Order and sanction Plaintiff Errant Gene Therapeutics, LLC ("EGT") and its counsel. (Doc. No. 100). SKI filed a second motion for sanctions and to hold EGT's lawyers in contempt of Court for additional violations of the Court's Protective Order on February 8, 2017. (Doc. No. 134.) Because EGT has violated the Protective Order by using protected information to initiate actions in other jurisdictions, the Court **GRANTS** SKI's motions for sanctions, but does not certify the matter for contempt.

## II. BACKGROUND

On March 18, 2015, Plaintiff Errant Gene Therapeutics, LLC initiated this action by filing a Complaint against Sloan-Kettering Institute for Cancer Research. (Doc. No. 1.) The Parties negotiated a protective order and submitted briefs as to the scope of the discovery to be categorized as "Attorney Eyes Only" ("AEO") and the number of people who would have access to information designated as "Confidential." (Doc. Nos. 52-54, 61-64, 66, 70, 72.) On June 2, 2016, the Court held oral argument on these issues and ruled that SKI's proposed protective

order, (Doc. No. 53-1), would operate as the Parties' interim Protective Order until a final order was issued by the Court. (Doc. No. 58.) The interim Protective Order contained the provision:

> …Confidential and Attorneys' Eyes Only information shall be used by the Receiving Party solely for the purposes of preparation for trial, pretrial proceedings, and trial of actions and proceedings in the above-captioned action and not for any business, commercial, regulatory, competitive, personal or any other action.

(Doc. No. 53-1 at ¶ 8(1).) The Court issued an Opinion and Order adopting SKI's proposed scope of the "Attorneys' Eyes Only" designation to include highly confidential research, development, and commercial information. (Doc. No. 77 at 6-8.) In addition, the Court adopted EGT's proposal to limit disclosure of confidential informational to three employees. (*Id.* at 8-9.) The Court directed the Parties "to conduct discovery in [a] manner consistent with the opinion." (*Id.* at 9.) The Parties never filed a fully-executed amended protective order to replace the interim Protective Order.

## A. EGT's Proposed Motion

On September 22, 2016, EGT requested leave from The Honorable Alison J. Nathan to file a Second Amended Complaint. (Doc. No. 87.) Judge Nathan terminated the Motion and directed the Parties to resubmit the Motion before the undersigned. (Doc. No. 88.) On September 30, 2016, the Court received a letter from EGT indicating that the Parties had stipulated to EGT filing the Second Amended Complaint. Letter from Kenneth Sussmane, Counsel for EGT, to the Honorable Ronald L. Ellis (Sept. 30, 2016). The letter indicated that a motion requesting leave to file the Second Amended Complaint would be forthcoming, and attached the proposed Second Amended Complaint which contained highlighting of sections that SKI contended should be filed under seal. (*Id.*) EGT stated that those highlighted portions should not be filed under seal or redacted. (*Id.*) On October 19, 2016, EGT filed a joint letter from the Parties wherein EGT moved to file its Second Amended Complaint and the Parties

2

argued their respective positions on sealing and redaction. (Doc. No. 96.) EGT filed a letter in reply to some of SKI's arguments that the Second Amended Complaint should be filed under seal on October 21, 2016. (Doc. No. 97, refiled at 103.) SKI objected to EGT's reply letter, arguing that it was improperly filed outside the Court's instruction to submit discovery issues by joint letter. (Doc. No. 98.)

## B. SKI's November 3, 2016 Motion

In its first motion to enforce the Protective Order and sanction EGT and its counsel [hereafter "SKI's First Motion"], SKI alleges that EGT violated the Court's Protective Order through filing a complaint against Bluebird Bio, Inc. ("Bluebird") in the Circuit Court of Cook County, Illinois, using information learned in discovery that was designated AEO and Confidential (Doc. No. 102.) EGT filed its complaint against Bluebird on September 27, 2016 [hereinafter the "Illinois complaint"], and it states:

> In the course of discovery in that [federal] case, Third Rock Ventures and SKI produced documents relating to [Bluebird]'s communications and dealings with SKI. Those documents were designated as 'attorneys eyes only,' thus EGT is precluded from publicly reciting what such documents disclose in this Complaint.

Weiss Decl. Exh. 11. at ¶ 67. Following paragraph 67, paragraphs 68-80 are redacted. Weiss Decl. Exh. 11. SKI alleges that these redacted allegations contain information derived from documents that are designated AEO and Confidential. (Doc. No. 102 at 9.)

On October 13, 2016, after being notified that SKI believed that the Illinois complaint was a violation of the Protective Order, EGT filed a motion to voluntarily nonsuit the Illinois case "out of an abundance of caution." (Doc. No. 104 at 6, 8.); Vickery Decl. ¶ 11. The Illinois court granted the motion on October 14, 2016. Vickery Decl. ¶ 11.

SKI's First Motion seeks a Court Order that would "(1) enjoin EGT from further misuse of protected materials, (2) revoke the *pro hac vice* admissions of the culpable attorneys [Vitale

3

Vickery Niro & Gasey LLP]¹, (3) preclude EGT from any use of the non-party documents it received under its subpoena, and (4) award SKI its reasonable attorneys' fees and costs incurred on this motion and otherwise on account of the violations." (Doc. 102 at 5.)

### C. SKI's February 8, 2017 Motion

SKI filed another motion alleging a second violation of the Protective Order on February 8, 2017 [hereinafter "SKI's Second Motion"]. (Doc. No. 134.) SKI alleges that EGT "used protected information to file suit in New York Supreme Court. . . [and] disclosed protected information in its publicly filed state complaint." (Doc. No. 136.) EGT had initiated an action in New York Supreme Court on January 26, 2017 [hereinafter the "New York complaint"]. (*Id.* at 9). SKI alleges that because the complaint was signed by Girondi, EGT's attorneys violated the Protected Order by sharing AEO information with Girondi. (*Id.* at 10.);(Doc. No. 142 at 1.)

In SKI's Second Motion, it asks the Court to: (1) hold EGT in contempt, (2) order EGT to dismiss the New York state action with prejudice, and (3) award SKI its attorneys' fees and costs incurred in connection with this violation. (Doc. No. 136 at 5.)

## III. DISCUSSION

### A. SKI's First Motion for Sanctions

EGT contends that no AEO or Confidential information was disclosed in the Illinois complaint. (Doc. No. 104 at 4.) It claims that all unredacted factual allegations came from the publicly filed Amended Complaint in this case. (*Id.*) EGT argues that "by redacting the confidential information in the Illinois complaint until such time as EGT obtained the legal rights to disclose it, the information obtained under the Protective Order in this case was not being 'used.'" (Doc. 104 at 4.) EGT has not provided any support for its contention that filing a

---

¹ Formerly named Niro Law

4

complaint with redaction of protected information is not a violation of the Protective Order given that the Protective Order expressly requires AEO and Confidential information to be filed under seal. (Doc. 53-1 at ¶ 11.)

SKI argues that use of protected information alone, even without disclosure, is a violation of the Protective Order. (Doc. No. 110. 5-6.) The Court agrees. Courts in this District have found violations of similar protective orders where a party used protected information in another action. *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, No. 07 CV 2352 (HB), 2007 WL 1498114, at *7-*8 (S.D.N.Y. May 23, 2007) (finding that the protective order which prohibited use of "confidential" or "attorneys' eyes only" information to be used "in any other litigation proceeding," barred the use of protected information to initiate a new action in another jurisdiction.); *In re Biovail Corp. Sec. Litig.*, 03cv8917 (RO) 247 F.R.D. 69, 70-71 (S.D.N.Y. 2007) (prohibiting the direct or indirect use of discovery material protected by the protective order.) Courts in other jurisdictions have reached similar conclusions. *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 13cv391(ES) (JAD), 2016 U.S. Dist. LEXIS 61373, *5-*7 (D.N.J. Jan. 22, 2016) (finding violations of a discovery confidentiality order which required that confidential information be "used. . . soley for the purposes of this litigation" where a party used the knowledge of the contents from confidential documents to argue for discovery production in a different case.); *On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 922-23 (finding that "Plaintiff's use of protected information to file a separate state court lawsuit—as opposed to this litigation—is tantamount to no compliance at all" and holding the plaintiff in civil contempt.).

The plain language of the relevant terms prohibits EGT from using protected information for any purpose other than its participation in *this* action. Because EGT did not seek permission

5

from the Court, using the confidential and AEO information to file the Illinois complaint is a violation of the Protective Order. Further, although EGT redacted the information in the Illinois complaint, the Court finds that this was an additional violation of the Protective Order, which requires that confidential and AEO information be filed under seal.

EGT argues that SKI's reading of the Protective Order is illogical because it would preclude the use of information to bring a suit against Bluebird. (Doc. No. 104 at 8.) EGT claims that since it cannot bring a suit against Bluebird in federal court, Bluebird would be immunized from suit. (*Id.*) The Court disagrees. EGT failed to exercise its options to negotiate the designations between the Parties or to request permission from the Court before filing its complaint. (Doc. No. 53-1 at ¶ 12.)

EGT has noted that "[a]ttempting to shield disclosure of wrongdoing by designating information confidential-attorneys' eyes only may itself be sanctionable." (Doc. No. 104 at 12-13) (internal quotation marks omitted.) Based on an email produced in discovery, EGT claims that "'SKI gave confidential information regarding EGT to [B]luebird.'" (Doc. No. 104 at 10.) The Court is unable to make a determination on whether SKI has engaged in sanctionable conduct, however, because EGT has failed to present sufficient evidence that SKI's designations were done in bad faith.

EGT also argues that SKI has suffered no harm or prejudice from EGT's actions given that the Illinois complaint was redacted and the only unredacted allegations were taken from the publicly available Complaint in this action. EGT specifically notes that it moved to dismiss the Illinois complaint within a day of being informed by SKI that it might have violated the Protective Order. (Doc. No. 13.) This is a narrow definition of injury. While the actual

information may not have been disclosed, SKI has been forced to use its resources to file this motion to enforce the Protective Order.

The Court finds that EGT has violated the Protective Order by using in its Illinois complaint AEO and confidential information it had obtained through discovery. The Court **GRANTS** SKI's request for an Order prohibiting EGT from further misuse of protected material. The Court finds that monetary sanctions are appropriate for EGT's violation of the Protective Order. *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 70-71 (S.D.N.Y. 2007) (awarding attorney fees and expenses for bringing a motion for sanctions where a party initiated an action in a different jurisdiction using information obtained under the protective order.)

SKI is also seeking the revocation of the Vitale Vickery Niro & Gasey LLP attorneys' *pro hac vice* admissions and an order precluding EGT from using third-party documents obtained from Third Rock in any substantive motion or at trial. (Doc. No. 102 at 10-18.) Alternatively, SKI proposes that those attorneys be prohibited from further access to AEO materials. SKI argues that the violation was knowing and willful as demonstrated by the fact that the Parties had negotiated and briefed the scope of the Protective Order. (Doc. No. 102 at 11.) SKI asserts that this sanction is appropriate because the Protective Order has a "clear and express prohibition on the use of discovery from this case for 'other purpose[s] or any other action.'" (*Id.*)

SKI argues that by violating the Protective Order, the Vitale Vickery Niro & Gasey LLP attorneys have violated New York Rule of Professional Conduct 8.4 (c), which prohibits attorneys from "engag[ing] in conduct involving dishonest, fraud, deceit or misrepresentation." (Doc. No. 102 at 16.) The Court acknowledges that violations of a protective order have been found to constitute a violation of Rule of Processional Conduct 8.4, *see Peters v. Comm. On*

7

*Grievances for U.S. Dist. Court for S. Dist. Of New York*, 748 F.3d 456, 459, 461-62 (2d Cir. 2014); *In re Peters*, 127 A.D.3d 103, 106-08 (First Dep't 2015). Due process requires that an attorney be afforded notice and an opportunity to be heard before the client is denied counsel of choice. In any case, revocation of the attorneys' *pro hac vice* status appears to be moot, because this case has been dismissed. (Doc. No. 125.)

SKI has also requested that EGT be precluded from using Third Rock's documents that were produced subject to the Protective Order in any substantive motion in the case and at trial. (Doc. No. 102 at 17.) This issue is also moot given that this case has been terminated and there will be no occasion for EGT to use the evidence in this case. Should EGT wish to use this information in another action, it should follow the procedures established in the Protective Order to request permission to use these documents or modify the Protective Order pursuant to paragraphs 12 and 15 respectively. (Doc. No. 53-1.)

## B. SKI's Second Motion for Sanctions

SKI argues that EGT violated the Protective Order by filing the New York complaint because EGT "disclos[ed] information obtained only though Confidential and AEO designated materials." (Doc. No. 136 at 10.) Additionally, because Girondi signed the New York Complaint, SKI argues that EGT also violated the Protective Order by disclosing AEO information to him. (Doc. No. 136 at 10.) Because EGT had previously challenged the Confidential and AEO designations in its motion to unseal the proposed Second Amended Complaint and because SKI had moved for sanctions for EGT's use of this information in the Illinois complaint, SKI argues that EGT knew that the confidential information was subject to the Protective Order. (*Id.* at 10-11.)

8

EGT argues that the allegations containing the confidential information are "wholly supported by an independent factual basis." (Doc. No. 141 at 2.) Paragraphs 52-54 of the New York complaint explain how EGT alleges to have obtained the information:

> 52. SKI and Bluebird entered into a partnership for the purpose of wresting the rights to the EGT Vector from EGT and ceding them to Bluebird, and SKI pressured EGT to release such rights in furtherance of the partnership.
>
> 53. In a publicly filed motion to quash the deposition of Bluebird CEO Nick Leschly, in the case of *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-CV-2044 (AJN), 2017 U.S. Dist. LEXIS 6990, Bluebird admitted: (1) Bluebird was EGT's "main competitor" and (2) Bluebird entered into a separate agreement, heretofore referred to as "the secret agreement," a secret agreement which was never disclosed to EGT in the course of its dealings with SKI. EGT did not know and could not have discovered such secret dealings otherwise, and EGT alleges that this agreement was kept secret, by the design of both SKI and Bluebird, in order to wrest control of the EGT Vector away from EGT and clear the path for Bluebird's development of its competing vector.
>
> 54. The secret agreement precluded SKI from developing the EGT Vector with EGT or any entity other than Bluebird. For example, in 2014, Biomarin Pharmaceutical, Inc., a significant pharmaceutical company, approached SKI to seek to commercialize the EGT Vector. Thereafter, Biomarin informed EGT that SKI was reticent to negotiate with Biomarin due to preexisting contract rights and a purported option. At the time, EGT believed that SKI was referring to EGT contract issues; it is now evident that the existence of the secret agreement with Bluebird precluded SKI from doing a deal with Biomarin and other third parties.

(New York Complaint ¶¶ 52-54, Doc. No. 135-3.) EGT states that Bluebird's disclosure of the agreement in the motion to quash "enabled Plaintiff's CEO Patrick Girondi to connect certain past communications with SKI, Bluebird, and other third parties and events to the facts contained in the motion to quash." (Doc. No. 141 at 2.) Thus, EGT denies that its counsel disclosed any AEO information to Girondi. (Doc. No. 141 at 3.)

Given that the allegations in the New York complaint contain information that is also contained in AEO documents, EGT has a heavy burden of demonstrating that Girondi "relied solely upon an independently-developed factual basis to support its New York complaint." (Doc.

9

No. 141 at 2.) This heavy burden cannot be satisfied merely through EGT's own attestation. Independently verifiable information is necessary to substantiate EGT's claims. As SKI has pointed out, EGT failed to provide a detailed account of the events Girondi claims to have served as the basis for his inferences. The Girondi declaration does not explain how knowledge of an agreement between SKI and Bluebird supported a conclusion that the agreement was formed "in order to wrest control of the EGT Vector away from EGT and clear the path for Bluebird's development of its competing vector;" or, more specifically, that the agreement "precluded SKI from developing the EGT Vector with EGT or any entity other than Bluebird." (NY Complaint ¶¶ 52-54, Doc. No. 135-3 at 13.)

EGT also argues that it should not be sanctioned for filing the New York complaint because it was expressly permitted to re-file its case in state court, by Judge Nathan's Order of dismissal. (Doc. No. 124) However, the Order of dismissal did not excuse EGT from its duties pursuant to the Protective Order, and the permission to re-file referred only to the case that had been alleged up to that point and not to new allegations that had yet to be accepted in an amended complaint.

Thus, the Court finds that EGT violated the Protective Order when it disclosed information that was Confidential and AEO in its New York complaint and by sharing AEO information with Girondi. The Court **GRANTS** SKI's request for Sanctions. The Court will not certify the issue of contempt to the District Judge because the sanctions imposed by the Court sufficiently addresses the misbehavior of EGT.

SKI also requests an Order requiring EGT to dismiss its New York State action with prejudice. While the Court declines the invitation to order a dismissal, it notes that because EGT must refrain from further misuse of the AEO and Confidential information obtained in this case,

continuing to prosecute the New York action while avoiding further violation of this action's Protective Order would be impractical if not impossible.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** SKI's motions to for Sanctions and **DENIES** its motion to hold EGT and its attorneys in contempt of Court. (Doc. Nos. 100 and 134.)

**IT IS HEREBY ORDERED THAT:**

1. EGT and its attorneys refrain from further misuse of the AEO and Confidential information obtained in this case pursuant to the Protective Order.
2. EGT pay SKI's reasonable attorneys' fees and costs of bringing these two motions for sanctions (Doc. Nos. 100 and 134.)
3. SKI submit hours and rates for the Court's approval on or before **June 19, 2017**.

**SO ORDERED this 5th day of June 2017.**
**New York, New York**

_____
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**