UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERRANT GENE THERAPEUTICS, LLC,

                Plaintiff,

- against -

SLOAN-KETTERING INSTITUTE FOR CANCER RESEARCH,

                Defendant.

**OPINION AND ORDER**
**15-CV-2044 (AJN) (RLE)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-16-17

**RONALD L. ELLIS, U.S.M.J.:**

## I. INTRODUCTION

On June 27, 2017, the Court held a contempt hearing with the Parties. The Court instructed the Parties to submit briefs on whether SKI improperly designated seventeen (17) documents Confidential or Attorney's Eyes Only ("AEO"). The seventeen documents are attached to EGT's July 7, 2017 submission as Exhibit A through Q (the "17 documents"). On July 10, 2017, the Court received briefs from Plaintiff Errant Gene Therapeutics, LLC ("EGT") and Defendant Sloan-Kettering Institute for Cancer Research ("SKI"). EGT asks the Court to remove the 17 documents' AEO designations and to order SKI to reclassify the approximately 80,000 documents designated AEO as either Confidential or non-confidential. Because EGT has not overcome the presumption against a modification of the protective order, the Court **DENIES** EGT's requests for the 17 documents to be de-designated and for all AEO documents to be reclassified.

## II. BACKGROUND

Because this Court has addressed the facts of this matter in previous Opinions, the following summary assumes that the reader is familiar with this case.

On March 18, 2015, EGT initiated this action by filing a Complaint against SKI. (Doc. No. 1.) The Parties negotiated a protective order and submitted briefs on the scope of the discovery to be categorized as AEO and the number of people who would have access to information designated as "Confidential." (Doc. Nos. 52-54, 61-64, 66, 70, 72.) On June 2, 2016, the Court held oral argument on these issues and ruled that SKI's proposed protective order, (Doc. No. 53-1), would operate as the Parties' interim Protective Order until a final order was issued by the Court. (Doc. No. 58.) The interim Protective Order contained the following relevant provisions:

> …Confidential and Attorneys' Eyes Only information shall be used by the Receiving Party solely for the purposes of preparation for trial, pretrial proceedings, and trial of actions and proceedings in the above-captioned action and not for any business, commercial, regulatory, competitive, personal or any other action.

(Doc. No. 53-1 at ¶ 8(1).)

> Modification Permitted:…The Court retains jurisdiction even after termination of this action to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the Court may from time to time deem appropriate.

(*Id.* at ¶ 15.)

> Termination of the Litigation: Within 60 days after the final conclusion of this litigation, including all appeals, all Confidential and Attorneys' Eyes Only information, and all copies of the same, shall be returned to the Producing Party or, at the option of the Receiving Party, destroyed. This includes all notes, memoranda or other documents that summarize, discuss or quote materials produced and designated as Confidential and Attorneys' Eyes Only information, except that, with respect to word processing and database tapes and disks, the Receiving Party shall destroy or erase such tapes or disks to the extent practicable.

(*Id.* at ¶ 16.) The Court issued an Opinion and Order adopting SKI's proposed scope of the "Attorneys' Eyes Only" designation to include highly confidential research, development, and commercial information. (Doc. No. 77 at 6-8.) In addition, the Court adopted EGT's proposal to limit disclosure of confidential informational to three employees. (*Id.* at 8-9.) The Court

2

directed the Parties "to conduct discovery in [a] manner consistent with the opinion." (*Id.* at 9.) The Parties never filed a fully-executed amended protective order to replace the interim Protective Order. On January 18, 2017, the Honorable Alison J. Nathan granted EGT's motion to dismiss for lack of jurisdiction and the case was terminated. (Doc. No. 124.)

On June 12, 2017, EGT filed an Amended Complaint in New York State Supreme Court. (Doc. No. 154-4.) EGT has asked this Court to "remove the AEO designation from the 17 documents and rule that the 17 Documents may be used in connection with the State Court action." (Letter from Kenneth Sussmane, Counsel for EGT, at 1, (July 7, 2017) (on file with the Court) [hereinafter "EGT's July 7 letter"). In addition, EGT alleges that SKI abused the Court's protective order by marking 80,000 documents as AEO and asks the Court to "order SKI to immediately reclassify all documents as either Confidential or Non-Confidential." (*Id.*) SKI submitted an opposition to EGT's request to de-designate the 17 documents on July 7, 2017.[1] ((Letter from Charles A. Weiss, Counsel to SKI (July 7, 2017) (on file with the Court) [hereinafter "SKI's July 7 Letter"]. On July 13, 2017, SKI submitted an additional letter in opposition to EGT's request that SKI be ordered to reclassify the approximately 80,000 documents that it designated AEO. (Letter from Charles A. Weiss, Counsel to SKI (July 13, 2017) (on file with the Court) [hereinafter "SKI's July 13 Letter"].

### III. DISCUSSION

Rule 26(c) of the Federal Rules of Civil Procedure authorizes courts, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... requiring that a trade secret or other confidential research,

---

[1] SKI refers to 20 documents as being at issue as a consequence of simultaneous briefing. SKI has provided a table that identifies the Bates numbers of the documents as matched against EGT's exhibits. (Letter from Charles A. Weiss, Counsel to SKI, at Ex. 1 (July 7, 2017) (on file with the Court)

3

development, or commercial information not be revealed or be revealed only in a specified way ...." Fed.R.Civ.P. 26(c). These protective orders are subject to modification, and "[w]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir.1987)( *"In re Agent Orange"*).

According to the Protective Order, the discovery produced in this case was "solely for the purposes of...proceedings in...[this] action and not for...any other action." (Doc. No. 53-1 at ¶ 8(1).) Since the case was dismissed on January 18, 2017, there will be no further proceedings on the merits. (Doc. No. 124.) Further, as required by the Protective Order, the Parties were required to destroy all discovery "within 60 days after the final conclusion of this litigation." (Doc. No. 53-1 at 8.)

Because EGT requests that the Court change the designations of SKI's production despite there not being any future proceedings on the merits in this case, accommodating EGT's requests, requires a modification of the protective order 1) allowing discovery produced in this action to be used in another action and 2) allowing discovery to exist 60 days past the termination of the action.

## A. Standard for Modification of Protective Order

Generally, there is a strong presumption against modification of a protective order. "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir.2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979)). When parties reasonably rely on a protective order, the Second

4

Circuit has been "hesitant to permit modifications that might unfairly disturb the legitimate expectations of the parties or deponents." *In re: Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 255 F.R.D. 308, 318 (D. Conn.2009) (quoting *TheStreet.Com*, 273 F.3d at 230) (internal quotations omitted).

### 1. The Documents Sought are Not "Judicial" and No Presumption of Access Exists

Judicial documents, which "are items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process" should be presumptively available to the public. *TheStreet.com*, 273 F.3d at 231 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995) ( *"Amodeo I"* ) (internal quotations omitted). The Court must determine whether the documents sought are "judicial documents" and should therefore be categorically excluded from the strong presumption against access to sealed documents. The "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d T 145. Rather, the document must be "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.* While documents "material to a court's disposition of a case on the merits" carry a strong presumption of access, documents exchanged by parties during discovery have the weakest presumption of access. *The Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. at 152, at 158-59; *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir.1995).

In this case, the documents sought by EGT were not used by the Court to make any rulings on the merits. Because the targeted documents do not fall within the category of judicial documents, EGT has no presumptive right of access.

5

## 2. EGT Does Not Overcome the Presumption Against Modification

In determining whether a party reasonably relied on a protective order, the court should consider four factors: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. *EPDM*, 255 F.R.D. at 318.

### a. Scope

A protective order that "cover[s] all documents and testimony produced in a lawsuit" is more subject to modification than a protective order that is "specifically focused on protecting certain documents…for a particular reason." *Id.* at 319.

SKI argues that the protective order's scope is "specific and targeted." The Court agrees. Indeed, in its opinion on the scope of the AEO designation, the Court expressly states "[w]hat SKI seeks to protect is not as broad as EGT suggests. SKI does not vaguely designate 'any sensitive document,' as EGT states, but rather describes what type of documents would be considered highly confidential." (Doc. No. 77 at 6) (Internal citations omitted).

EGT's main argument is that SKI's default designation in its document production was AEO, resulting in about 80,000 documents being marked AEO. Essentially, EGT argues that SKI broadly applied the protective order's discrete designations. (EGT's July 7 letter at 1.) EGT cites several cases in which courts required a party that designated a high percentage of its production as AEO or confidential to reclassify its documents. *THK AM. V. NSK CO.*, 157 F.R.D. 637, 645, 650 (N.D. Ill. Aug. 6, 1993)(finding it to be "absurdly high" that 79% of a party's document production had been designated as AEO and directing that party to re-classify those documents as either confidential or non-confidential); *In re Ullico Inc., Litig.*, 237 F.R.D. 314, 318 (D.D.C. July 11, 2006) (ordering Defendants "to remove the 'confidential' designation

6

from all of the documents it produced during discovery and review and re-label them in good faith...."); *Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. Feb. 12, 1992) (stating that the court had given the party which had been accused of overdesignating documents "Highly Confidential" ten days to reclassify the documents.)

These cases are not applicable to the instant action because in each of these cases, the litigation was ongoing, and the courts justified the reclassifications because the over designations were an impediment to litigation. *THK AM.*, 157 F.R.D. at 647 ("Courts are too overburdened with heavy caseloads and backlogs to be taxed by parties engaging in uncooperative, dilatory, and obstructionist litigation tactics, or similar stratagems designed to increase the litigation expenses of the opposing party."); *In re Ullico Inc., Litig.*, 237 F.R.D. at 318 ("The improper designation of thousands of documents as "confidential" would create unnecessary logistical restraints on Counterclaim Defendants' filing these documents with the court, including their inability to use the ECF system and having to file all of these documents under seal."); *Quotron Systems, Inc.*, 141 F.R.D. at 40 (noting that the Court had "imposed the deadline for the reclassification of the documents because it concluded that ADP had, as a litigation tactic and not due to inadvertence, overstamped documents "Highly Confidential.") Because this case has been terminated and there will be no further proceedings on the merits, there is no concern about the designations presenting a barrier to ongoing litigation.

### b. Language of the Order Itself

"Where a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified." *EPDM*, 255 F.R.D at 320; *TheStreet.com*, 273 F.3d at

7

231. *In re Agent Orange,* 821 F.2d at 147 (where the protective order was "applicable solely to the pretrial stages of the litigation" the court found that "any reliance on such a sweeping, temporary protective order simply was misplaced.")

Nothing in the express language of the protective order suggests that a party would have unreasonably relied on it. While the Court entered SKI's proposed protective order as the interim protective order, (Doc. No. 58), the Parties never submitted a finalized protective order incorporating the Court's order on the scope of discovery. In the absence of a replacement, the interim order governed. The interim protective order's provision providing for modification specifically requires Parties to apply to the Court for relief and specifies that "[t]he Court retains jurisdiction even after termination of this action…to make such amendments, modifications, deletions and additions to this Proactive Order as the Court may from time to time deem appropriate." (Doc. No. 53-1 at ¶ 15.) The protective order also states that it "shall survive and remain in full force and effect after termination of this action." (*Id.* at ¶ 19.) Finally, the protective order does not contain procedures for making disclosures to non-parties beyond court or agency subpoenas. (*Id.* at ¶ 13.)

### c. The Level of Inquiry the Court Undertook Before Granting the Order

The Court issued an order designating the Parties interim protective order on June 2, 2016. (Doc. No. 58.) The Parties then submitted briefs to the Court on their respective positions regarding the scope of the AEO designation and the number of people who would have access to information designated "Confidential." (Doc. No. 53-54, 61-64, 66, 70-71.) After considering the Parties positions, the Court issued an Opinion and Order as to these issues. (Doc. No. 77.) Thus the Court engaged in a comprehensive inquiry into the terms of the protective order before granting the order.

8

### d. Reliance on the Order

"The classic situation in which a party 'relies' on a protective order is where the party creates material during the course of litigation on the understanding that it will be kept confidential. . . ." *EPDM*, 255 F.R.D. at 322-23 (quoting *Allen v. City of New York*, 420 F. Supp. 2d 295, 300-01 (internal citations omitted)). "Conversely, where the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *EPDM*, 255 F.R.D. at 323.

In its briefing, SKI proposed that the AEO designation encompass "propriety or sensitive personal, research, or business information" (Doc. No.62 at 4.) SKI then produced business agreements and communications concerning business agreements and strategies. *See* (EGT's July 7 Letter at Exh. A-Q.) The sensitive nature of these documents is evidenced by the fact that EGT is seeking the production of these documents so that it can use them to prosecute a lawsuit in another jurisdiction against SKI and a third party, Bluebird Bio. *See* (*id.* at 1.) SKI's reliance on the protective order is thus supported by the potential for these documents to expose it to additional litigation.

Whether these documents would have been discoverable subject to a motion to compel is uncertain. While EGT's First Amended Complaint contained allegations of fraud, which may have required these documents to be produced, EGT was never granted leave to amend its Complaint to add charges of conspiracy. (EGT's First Amended Complaint, Doc. No. 16). On balance, the Court finds that SKI's reliance on the order was not unreasonable given the nature of the litigation.

Thus, EGT has not met its burden that the protective order should be modified to 1) allow discovery produced in this action to be used in another action and 2) allow discovery to exist 60 days past the termination of the action.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** EGT's motion for the 17 documents to be de-designated and for all AEO documents to be reclassified. EGT shall destroy or return the documents in accordance with the interim Protective Order and with this Opinion, but no later than **October 20, 2017**.

**SO ORDERED this 16th day of October 2017.**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

10